

CLERK, U.S. BANKRUPTCY COURT
NORTHERN DISTRICT OF TEXAS

# ENTERED

THE DATE OF ENTRY IS ON
THE COURT'S DOCKET

The following constitutes the ruling of the court and has the force and effect therein described.

Signed October 9, 2020

United States Bankruptcy Judge

---

# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
### AMARILLO DIVISION

| | | |
|---|---|---|
| **In Re:** § § | | |
| GIBSON FARMS § § | Case No. 20-20271-RLJ-11 | |
| Debtor. § | | |
| **In Re:** § § | | |
| NATURE'S WAY COMPOST, LLC § § | Case No. 20-20272-RLJ-11 (Jointly Administered Under | |
| Debtor. § | Case No. 20-20271-RLJ-11) | |
| **In Re:** § § | | |
| GIBSON INVESTMENTS § § | Case No. 20-20273-RLJ-11 (Jointly Administered Under | |
| Debtor. § | Case No. 20-20271-RLJ-11) | |
| **In Re:** § § | | |
| WENDELL LEE GIBSON and wife, PAULA GIBSON § § | Case No. 20-20274-RLJ-11 (Jointly Administered Under | |
| Debtors. § | Case No. 20-20271-RLJ-11) | |

## AGREED ORDER GRANTING DEBTORS' EMERGENCY MOTION FOR INTERIM USE OF CASH COLLATERAL AND PROVIDING ADEQUATE PROTECTION TO RABO AGRIFINANCE, INC. AND THE SMALL BUSINESS ADMINISTRATION

On this date came on for hearing Debtors' Emergency Motion For Interim Use of Cash Collateral and Providing Adequate Protection to Rabo Agrifinance, Inc. and The U.S. Small Business Administration ("Motion"), and the Court having been advised by counsel for the Debtors, as well as by counsel for Rabo AgriFinance LLC, fka Rabo Agrifinance, Inc. ("Rabo") and counsel for the U.S. Small Business Administration ("SBA"), each of which asserts certain liens and security interests in various assets of the Debtors' bankruptcy estates, that the Debtors, Rabo and SBA have reached an agreement concerning the granting of the Motion on an interim basis under the terms and conditions set forth in this Order, and the Court having determined that the agreement of the parties to allow the interim use of cash collateral is proper and in the best interest of the bankruptcy estates, the Court enters the following interim findings and orders relating to the Motion:

1. Gibson Farms, Nature's Way Compost, LLC, Gibson Investments and Wendell Lee and wife, Paula Gibson (the "Debtors") are the Debtors in Possession in the above-referenced Bankruptcy proceedings.

2. The Debtors each filed for relief under Chapter 11 of the U.S. Bankruptcy Code on October 5, 2020 ("Petition Date"). In addition to these filings, a petition for relief under Chapter 11 case was also filed on behalf of Carlene Beauchamp. The number for that case is Case No. 20-20270. Ms. Beauchamp is the sister of Paula Gibson.

3. Concurrently with the filing of this Motion, on October 6, 2020, the Debtors filed Motions for Joint Administration of their cases under lead Case No. 20-20271-RLJ-11, Gibson Farms. The case of Ms. Carlene Beauchamp will likely be separately administered because the

amounts and nature of the indebtedness in her case is substantially different than those of the Debtors in these four cases.

4. This is a core proceeding and this Court has jurisdiction over this matter pursuant to 28 U.S.C. Sections 1334 and 157, and 11 U.S.C. Sections 363. Venue is proper pursuant to 28 U.S.C. Sections 1408 and 1409.

5. The Debtors have represented to the Court as follows: (a) Paula and Lee Gibson ("Paula & Lee") are family farmers and ranchers who own and operate certain farm and ranch land located in Moore and Hartley counties, at the very top of the Texas Panhandle; (b) Gibson Farms is a Texas general partnership comprised of Paula & Lee and their sons, Braden and Brett Gibson; (c) Paula Gibson and Carlene Beauchamp each own an undivided 50% interest in 2,838.10 acres of farmland located in Hartley and Moore Counties; (d) Gibson Farms rents the land to raise feed grains, forage crops, and livestock which it sells either through private contract, on the open market, or through livestock auction facilities; (e) in addition, Paula and Lee operate Nature's Way Compost, LLC ("NWC"), which they own with their children, Braden and Brett Gibson, and Katie Strohmeier; (f) NWC is a manure processing, delivery and application company which takes livestock manure from local feedlots, processes and then sells it to local farmers for use as fertilizer in farming operations; (g) Gibson Investments is a Texas general partnership comprised of Paula & Lee, and their sons, Braden and Brett Gibson; and (h) Gibson Investments owns a tract of farmland as well as the headquarters and office facilities for Gibson Farms and NWC.

6. Rabo is the Debtors' largest secured creditor. Rabo asserts that, as of September 10, 2020, it was owed in the aggregate approximately $10,542,000 secured by deed of trust liens and security interests against the Debtors' real and personal property assets, including but not limited to

cattle, crops, crop insurance, USDA farm program benefits, accounts, inventory, and farm machinery and equipment, and the proceeds and products thereof. Rabo's collateral includes property that constitutes cash collateral as defined by Section 363(a) of the Bankruptcy Code (hereafter, "Cash Collateral").

7. Paula Gibson and Carlene Beauchamp each own an undivided 50% interest in 2,838.10 acres of farmland located in Hartley and Moore counties. The last completed appraisal of the value of the land subject to Rabo's deed of trust was conducted by Ag Texas in August of 2019 and at that time had an estimated value of $5,780,000. The Debtors are in the midst of getting a new appraisal of this farmland. The land was posted for foreclosure on the first Tuesday in October, 2020, by Rabo and the Chapter 11 petitions were filed to invoke the automatic stay and prohibit the foreclosure from going forward.

8. The SBA is the other secured creditor in these cases with a lien on Cash Collateral. The SBA is owed notes associated with the CARES Act EIDL loan program and holds a second lien security interest against the same types of collateral as Rabo (including Cash Collateral) with the exception that it has no lien against real property. The total debt owed to the SBA by Gibson Farms and NWC is $149,900.00 each for a total debt to the SBA of $299,800.

9. The Debtors, Gibson Farms and NWC, also have installment purchase contracts related to vehicles and farm machinery and equipment which total approximately $1.9 million.

10. The Debtors have outstanding trade payables owing to agriculture chemical, seed and fertilizer suppliers, along with local vendors for fuel, parts, livestock feed and other crop inputs which result in total unsecured claims of approximately $978,000.

11. The collateral analysis prepared by the Debtors reflecting the value of assets against which Rabo holds liens and security interests totals $12,657,642.55 and is summarized as follows:1

- Gibson Farms – Farm machinery & equipment = $1,676,986.00
- Nature's Way Compost -- Equipment = $1,616,816.55
- Gibson Farms – Crops, crop insurance, FSA benefits, etc. = $1,227,040.00
- Nature's Way – Inventory, accounts receivable = $1,895,000.00
- Gibson Farms – Projected 2021 USDA Farm Program Payments = $ 225,000.00
- Paula Gibson and Carlene Beauchamp (Individually & In Trust) & Gibson Investments – 2,838+ acres = $5,780,000.00
- Beauchamp Estate Partnership – Crops, cash, & FSA benefits = $ 189,000.00
- Gibson Investments – Crops, cash, & FSA benefits = $ 89,800.00
- G&G Cattle – Livestock, cash, etc. = $ 183,000.00

TOTAL COLLATERAL VALUE: $ 12,657,642.55

12. Currently, the Debtors have an immediate need for use of Cash Collateral while they work to develop a reorganization plan for their farming, compost, and livestock operations. Gibson Farms is in the midst of chopping its own corn crop into silage as well performing custom silage chopping operations for other farmers. The silage owned by Gibson Farms is sold to local dairies. In addition, Gibson Farms must have its cotton harvested for delivery to the Plains Cotton Cooperative Association as well as harvest its feed grain crops which will be used for delivery to satisfy executory grain contracts. There is also the need to care for and feed livestock. In addition, NWC has ongoing operations which require funds to properly process the manure and deliver the finished inventory of composted fertilizer to farmers for use on their farms. Also, NWC performs custom

---

1 These valuation numbers are the Debtors' contentions of value and are not stipulated to by Rabo. Rabo reserves all rights and arguments in the Debtors' cases, including all rights and arguments relevant to Cash Collateral, valuation, adequate protection and related matters.

hauling in connection with the chopping operations of Gibson Farms and thereby produces freight income. Absent the immediate use of Cash Collateral these operations and the Debtors' estates may suffer immediate and irreparable harm as they will not be able to complete harvesting their crops, maintain their livestock, provide hauling services for the custom chopping operations, or process the inventory of manure and deliver finished compost to customers.

13. Gibson Farms currently has on hand cash and proceeds totaling $556,367 representing proceeds from the sale of crops which are subject to liens in favor of Rabo. Similarly, NWC has cash deposits of $152,129 from collected accounts receivable against which Rabo claims security interests. The Debtors also have accounts receivable which are subject to Rabo's liens, which accounts will be collected by the Debtors in the ordinary course of their business.

14. The Debtors would show that Gibson Farms has immediate requirements for use of funds totaling $53,088 to pay for expenses necessary for the care and maintenance of the livestock and harvesting of crops for the next 14 days, including such necessary inputs as feed, fuel, rent, living expenses, and labor in accordance with the budget reflected on the attached Exhibit "A" until the Court can conduct a final hearing on Debtors' request for permanent use of cash collateral.

15. In addition, the Debtors would show the Court that NWC has immediate requirements for the use of cash collateral totaling $67,451 to maintain operations at its manure processing and compost facility for the next 14 days. The specific use of the funds is detailed on the budget attached hereto as Exhibit "B."

16. Paula & Lee along with Gibson Farms require the use of cash collateral as well as reflected on the budgets attached hereto as Exhibit "C," and Exhibit "D" which total less than $2,700.

17. As adequate protection for the interim use of cash collateral, the Debtors propose to grant Rabo and SBA replacement liens of like kind, extent, character and priority as they had against the Debtors' pre-petition assets. Such replacement lien would be against the Debtors' post-petition livestock, post-petition accounts receivable, as well as all post-petition crops, crop insurance and FSA Farm Program Payments, in an amount equal to the amount of cash collateral used in accordance with 11 U.S.C. § 361(2) in the same priority and in the same nature, extent and validity as such liens, if any, existed pre-petition. To the extent a lien is created in these post-petition assets, accruing or becoming the Debtors' property on a post-petition basis, such lien shall extend only to protect Rabo and SBA for the amounts of cash collateral used on a post-petition basis to such post-petition assets.

18. The Court finds that an emergency exists that justifies the Court authorizing the interim use of cash collateral until the Court can have a final hearing on the use of Cash Collateral. The Court finds that the notice and opportunity for hearing concerning the Court's consideration of the Motion is adequate under the circumstances.

18. The parties have reached an agreement to allow the interim use of Cash Collateral in the amount described above, pursuant to the terms of this Interim Order, until the Court holds a final hearing on the use of Cash Collateral. The Debtors may use the Cash Collateral, consisting of the proceeds which it holds in its possession as described above, in accordance with the Budgets attached as Exhibit "A" – "D" for the next 14 days.

19. Nothing in this Order prevents any party to this Order, or any other creditor or party in interest in these bankruptcy cases, from contesting the nature, extent, priority, or validity of any creditor's alleged lien or ownership interest in the Cash Collateral or the categories of assets from

which it was derived.

IT IS, THEREFORE, ORDERED, ADJUDGED AND DECREED the Debtors are hereby authorized to use Cash Collateral consisting of the currently collected funds identified by the Debtors in their Motion as follows – Gibson Farms - $53,088.00; NWC - $67,451.00 and Paula & Lee along with Gibson Farms - $2,700.00, to pay for expenses necessary for the care and maintenance of the livestock and harvesting and hauling of crops, to maintain operations at its manure processing and compost facility and living expenses in accordance with the Budgets attached to this Order as Exhibit "A" - "D" for the next 14 days.

IT IS FURTHER ORDERED that as adequate protection of Rabo's and SBA's interest in the Cash Collateral in accordance with 11 U.S.C. §§ 361 and 363(e) and applicable law, Rabo and SBA are hereby granted valid, automatically perfected post-petition replacement liens against any and all personal property assets of the Debtors acquired or generated by the Debtors after their Petition Dates, if any, and in any products, proceeds or insurance recoveries related thereto, including but not limited to all post-petition farm products, feed, fertilizer, supplies, inventory, accounts, proceeds from crop or livestock insurance, general intangibles, and all products and proceeds thereof, for the full amount of the Cash Collateral which is utilized pursuant to this Order. The replacement liens granted hereunder shall have the same validity and priority as the security interests and liens existing against the Cash Collateral on the date of the filing of the Debtors' bankruptcy petitions. The replacement liens granted hereunder are declared valid and properly perfected without the need for the execution, recording or filing of any further document or instrument or the taking of any further act that might

otherwise be required under non-bankruptcy law. Further, any statements or filings required to be filed to preserve or extend Rabo's or the SBA's or any other party's lien on Cash Collateral may be filed or recorded at any time during the pendency of these cases without a stay relief order or otherwise seeking or obtaining the permission of the Court. To the extent a lien is created in these post-petition assets, accruing or becoming the Debtors' property on a post-petition basis, such lien shall extend only to protect Rabo and SBA for the amounts of Cash Collateral used on a post-petition basis to such post-petition assets.

IT IS FURTHER ORDERED that the adequate protection amount shall have priority in these Chapter 11 cases or related bankruptcy case if any of these cases are converted to Chapter 7 in accordance with the provisions of Section 507(b) of the Bankruptcy Code over all administrative expenses of the kind specified in Section 507(a) of the Bankruptcy Code. No costs or administrative expenses which have been or may be incurred in these bankruptcy cases, in any conversion of any of these bankruptcy cases, or in any proceedings related thereto, and no priority claims, including, without limitation, any super priority claims, are or will be prior to or on parity with Rabo's and/or SBA's claim for the adequate protection amount.

IT IS FURTHER ORDERED that nothing in this Order shall limit, impair, waive or otherwise affect the rights of any of the parties to contest the nature, extent, validity, or priority of the liens or interests asserted by Rabo or SBA, or any other party, in these bankruptcy cases, and any findings in this Order are only interim findings for the sole purpose of allowing the interim use of the Cash Collateral as specified herein. Any reference in this order to "Cash Collateral" is not an

express or implied finding as to the nature, extent, validity, or priority of either of the liens, if any, securing Rabo's or SBA's claims, or of the nature or extent of the Debtors' ownership of any cattle.

IT IS FURTHER ORDERED that the Debtors during this interim period during which they are authorized to use Cash Collateral shall provide an accounting of the use of cash collateral to Rabo or SBA within 48 hours from a written request from Rabo or SBA or their respective counsel. Additionally, during this interim period, the Debtors shall continue to provide to Rabo and the SBA such reports and other accountings (including but not limited to Loan Position Reports) as would otherwise come due under the terms of the loan and security documents that the Borrowers signed in favor of Rabo and the SBA.

IT IS FURTHER ORDERED that the findings of fact and conclusions of law of this Court pursuant to this Order shall be deemed effective upon the entry of this Order. To the extent that such findings may constitute conclusions, and vice versa, they hereby are deemed as such. Such findings are solely for the purpose of this Order, which was entered upon an emergency basis, solely to allow the interim use of cash collateral as is necessary to maintain the Debtors' operations.

IT IS FURTHER ORDERED that the terms of this Order are effective upon entry of the Order and are not stayed.

IT IS FURTHER ORDERED that, notwithstanding the general authorization to use Cash Collateral granted to the Debtors hereunder, the Debtors are not authorized to pay and shall not pay any of the following expenses, whether or not included in the Budgets, pending the final hearing and the Court's final determination of the Motion:

A.  Any equipment lease payments due under any pre-petition leases;

B.  Any professional fees, including the funding of retainers to professionals employed or retained by the Debtors;

C.  Any trade debt owed for goods or services provided to the Debtors prior to the Petition Date;

D.  Any real property lease payments unless: (i) the payment is for post-petition lease obligations relating to 2020 only and not pre-petition lease obligations or obligations for future years, (ii) the material terms of the lease have been reduced to writing, with copies of such written lease terms to be provided to Rabo prior to any payment on such leases being made; and (c) the landlord to whom any payment is made signs a written acknowledgment of the receipt of such rent; and

E.  Any other debts or obligations owed by the Debtors as of the Petition Date, including any pre-petition wages owed by the Debtors as of the Petition Date, without further order of the Court after notice and a hearing authorizing such payments.

IT IS FURTHER ORDERED that the Debtors shall cooperate with Rabo in any Agricultural Field Collateral Inspection Department ("AFCID") inspections or other collateral inspections of Rabo's real or personal property collateral that Rabo may elect to perform. The Debtors shall take any actions reasonably requested by Rabo in order to ensure that such inspections or appraisals can be completed no later than three (3) business days prior to the final hearing on the Motion.

IT IF FURTHER ORDERED that the Debtors shall not grant any additional liens on or security interests in all or any part of their assets, whether under Section 364(d) of the Bankruptcy Code or otherwise, other than pursuant to a final order of the Court after due and appropriate notice to Rabo and the SBA, and an opportunity to respond or object.

IT IS FURTHER ORDERED that the Debtors shall follow reasonable collection procedures to collect all income, revenues, income, rents, pasture fees, proceeds, receivables, accounts and other amounts owing to the Debtors (whether arising before or after the Petition Date) as they become due.

IT IS FURTHERED ORDERED that the Debtors shall continue to insure and maintain all of their real and personal property assets, irrespective of whether or not the Debtors claims that Rabo's and/or the SBA's liens extent to those assets, in accordance with all of the terms and conditions of the loan and security documents they have executed in favor of Rabo and the SBA, and shall within fifteen (15) calendar days of this Order provide Rabo and the SBA with proof that all such property is adequately insured and that Rabo and SBA (to the extent required by such documents) are named as loss payees. Further, the Debtors shall keep all real and personal property collateral claimed by Rabo and the SBA free and clear of any and all liens, encumbrances, and security interests other than those which were in existence as of the Petition Date including, but not limited to, any feed, seed, supplier, agister or other liens granted under state or federal law, and any state, county, or city imposed personal property or ad valorem taxes.

IT IS FURTHER ORDERED that following entry of this Agreed Interim Order, the Debtors will provide Notice of the Entry of Agreed Order Granting Debtors' Emergency Motion For Interim Use of Cash Collateral and Providing Adequate Protection to Rabo Agrifinance, Inc. and The U.S. Small Business Administration ("SBA") pursuant to Bankruptcy Rule 4001(d) and Notice of Deadline to Object. The Notice shall be served by the Debtors upon all required parties in accordance with Bankruptcy Rule 4001(d)(1)(C) with objections to be filed and served upon counsel to the Debtors and creditors herein within fourteen (14) days after service of the Notice. If objections are filed, the Court shall conduct a hearing on the objection. The Notice shall also inform creditors and parties in interest if no objections are filed the liens granted herein shall be deemed first in right and priority against such assets described herein.

IT IS FURTHER ORDERED that a hearing on the Debtors' request for continued use of cash collateral is set for special setting on the Court's Docket on **Thursday, October 22, 2020 at 10:00 a.m. This hearing will be held by video conference and/or phone. The Webex meeting link and call-in information for the hearing will be posted on the Court's website under Judge Jones' Hearing Dates and Calendar Tab prior to the hearing.**

### End of Order ###

**APPROVED AS TO FORM AND CONTENT**
**AND ENTRY REQUESTED:**

MULLIN HOARD & BROWN, L.L.P.
P.O. Box 2585
Lubbock, Texas 79408-2585
Telephone: (806) 765-7491
Facsimile: (806) 765-0553
e-mail: drl@mhba.com

  /s/ David R. Langston
David R. Langston, SBN: 11923800
*Attorneys for Debtors, Gibson Farms, Nature's Way Compost, LLC, Gibson Investments and Wendell & Paula Gibson*

and

/s/ Heath Hendricks  (w/permission)
Heath Hendricks, SBN: 240556451
RINEY & MAYFIELD, LLP
320 S. Polk Street, Suite 600
Amarillo, Texas 79101
Telephone: 806-468-3200
Facsimile: 806-376-4509
Email: hhendricks@rineymayfield.com
*Attorneys for Rabo Agrifinance, Inc.*

and

RAY QUINNEY & NEBEKER P.C.
Michael R. Johnson (*Pro Hac Vice to be Filed*)
36 South State, Suite 1400
Salt Lake City, UT 84111
Telephone: (801) 532-1500
Facsimile: (801) 532-7543
Email: MJohnson@rqn.com

/s/ Michael R. Johnson (w/ permission)
Michael R. Johnson
*Attorneys for Rabo AgriFinance LLC*

ERIN NEALY COX
United States Attorney
Donna K. Webb, Assistant U.S. Attorney
1100 Commerce St., Ste. 300
Dallas, Texas 75242
Telephone: (214) 659-8600
Facsimile: (214) 659-8807
E-mail: donna.webb@usdoj.gov

By: /s/ Donna K. Webb (w/ permission)
    Donna K. Webb, SBN: 21024000
    ***Counsel for U.S. Small Business Administration***

GIBSON FARMS 14 DAY SOURCE OF FUNDS

| | October 8th-22nd |
|---|---:|
| **INCOME** | |
| CASH - Transfer of Funds to new Acct. | 138,128 |
| USDA | |
| Silage Income | 418,239 |
| **CASH** | 556,367 |
| **EXPENDITURES:** | |
| Compost (Product, Application, Freight) | - |
| Crop Insurance (Hail & RP) | - |
| Custom Hire (Harvest Labor & Argonomist) | - |
| Equipment & Vehicle Insurance | - |
| Equipment Rental/Lease/Office Lease | 4,643 |
| Farm Fuel | 4,167 |
| Fertilizer | - |
| Fuel | 6,167 |
| Harvest Expense/Ginning/Freight | - |
| Health Insurance | 625 |
| Herbicide | - |
| Interest Expense LOC &Other) | 500 |
| Labor & PR Tax | 29,500 |
| Leased Land-Cash Rent | - |
| Liability (Farm) Insurance | - |
| Licenses, Registration, Dues, Fees | - |
| Miscellaneous/Other/Property Tax/H2A | - |
| Professional Fees | - |
| Repairs(IRR.,Equipment, Vehicles) | 6,000 |
| Seed | - |
| Supplies (Includes Uniforms) | 1,486 |
| Travel, Meals | - |
| Utilities (Irrigation, NG, Elec.,tele) | - |
| Workers Comp Insurance | - |
| U.S. Trustee Fees (Quarterly) | |
| **TOTAL OPERATING EXP.** | |
| John Deere Financial (equipment ) | |
| Indian Inc. Leasing | |
| GM Financial | |
| TOTAL 14 DAY EXPENSE | 53,088 |

EXHIBIT A

## NWC 14 Day Source of Funds

October 8th-22nd

| | |
|---|---|
| **INCOME** | |
| CASH - Transfer of Funds to new Acct. | 152,129 |
| Compost/Freight/Application Income | |
| **TOTAL INCOME** | 152,129 |
| **EXPENDITURES:** | |
| Freight | |
| Line Up/Manure/Loader/Lab | |
| Bank Service Charges | 350 |
| Contract Labor | 5,583 |
| Advertising/Dues & Subscriptions | 1,000 |
| Equipment Lease | |
| Fuel | 10,000 |
| Guaranteed Payments/Partner Life | 4,968 *Executory contracts/Life Ins. Policies |
| Insurance - Liability | - |
| Insurance - Workmans Comp | 200 |
| Insurance - Barn/Equipment/Vehicle | 100 *Executory contracts/Life Ins. Policies |
| Insurance Health | 4,500 *Executory contracts/Life Ins. Policies |
| Interest Expense | |
| Legal & Accounting | |
| Licenses & Registration | 550 |
| Office Rent/Supplies | 250 |
| Meals/Travel/On-site Meals | |
| Payroll Expenses/H2A Housing | 23,950 |
| Repair & Maintenance | 12,500 |
| Supplies | 2,000 |
| Taxes - Personal & Property | - |
| Taxes - Franchise | - |
| Utilities/Phone | 1,500 |
| Misc. Expenses | |
| De Lage Laden Financial Service | |
| Ford Credit | |
| Indian Inc. Leasing | |
| John Deere Financial | |
| US Bank | |
| **TOTAL 14 DAY EXPENSE** | 67,451 |
| | |
| REMAINING BALANCE | 84,678 |

EXHIBIT B

GIBSON FARMS 14 DAY SOURCE OF FUNDS

|  | October 8th-22nd |
|---|---|
| INCOME | $ 64,133.63 |
| EXPENSE | |
| Supplies | 227.31 |
| Utilities | 385.2 |
| TOTAL EXPENSES | 612.51 |
| | |
| REMAINING BALANCE | $ 63,521.12 |


EXHIBIT C.

LEE & PAULA 14 DAY SOURCE OF FUNDS

| | October 8th-22nd |
|---|---|
| INCOME | $ 3,537.22 |
| EXPENSE | |
| Charitable contributions/Religious donations | |
| Clothing/laundry/dry cleaning | $ 50.00 |
| Food/Houskeeping | $ 400.00 |
| Dwelling Insurance | $ 165.08 |
| Health Insurance | |
| Meal/Entertainment | $ 300.00 |
| Medical | $ 515.23 |
| Nelnet Loan | |
| Personal Care Products & Services | $ 250.00 |
| Utilities | $ 190.06 |
| Misc | $ 200.00 |
| TOTAL EXPENSES | $ 2,070.37 |
| | |
| Remaining Balance | $ 1,466.85 |


EXHIBIT O.